NO. COA14-251

NORTH CAROLINA COURT OF APPEALS

Filed: 16 September 2014

STATE OF NORTH CAROLINA

    v.

DELUNTA ALUNDUS HULL

    and

SHARRELLE LYNN DAVIS

Guilford County
Nos. 12 CRS 77582-85
13 CRS 24290
12 CRS 77220-24

Appeal by defendants from judgments entered 6 August 2013 by Judge James M. Webb in Guilford County Superior Court. Heard in the Court of Appeals 28 August 2014.

> *Roy Cooper, Attorney General, by Anne J. Brown and Richard H. Bradford, Special Deputy Attorneys General, for the State.*

> *Staples Hughes, Appellate Defender, by Charlesena Elliott Walker, Assistant Appellate Defender, for defendant-appellant Hull.*

> *Amanda S. Zimmer for defendant-appellant Davis.*

STEELMAN, Judge.

Where there was evidence of all of the elements of the charge of larceny from the person, the trial court did not err in denying defendants' motions to dismiss. The trial court did

not commit plain error in its jury instructions on that charge. Where defendant was sentenced from the presumptive range, the trial court did not err by failing to make findings in mitigation or aggravation, or in not sentencing defendant from the mitigated range. Where the State presented evidence that Stuart's computer was in proximity to her and under her control, the trial court did not err in declining to submit the lesser charge of misdemeanor larceny to the jury.

## I. Factual and Procedural Background

On 8 May 2012, Rashad Perry, Robert Hawkins, David Williams, Gabrielle Stuart, Braielyn Peoples and Emory Matthews were gathered at Hawkins' apartment in Greensboro for "study and fellowship" in preparation for exam week. Perry and Hawkins stepped outside, and were approached by a man armed with a handgun, who robbed them of their cellular telephones. Two more people, Delunta Alandis Hull (Hull) and Sharrelle Lynn Davis (Davis), then approached, and the five people – Perry, Hawkins, Hull, Davis, and the gunman – entered Hawkins' apartment.

Davis pulled Perry into the kitchen while Hull and the gunman went through the apartment. Two laptop computers and another cellular telephone were taken. One of the computers belonged to Stuart.

Prior to the time of the theft, Stuart had been working on her physics homework. While studying, Stuart, along with Peoples, Hawkins, Matthews, and Perry, was playing a computer game called "Dance Central" on the television. Each would take turns playing the game. At the time of the theft, it was Stuart's turn to play. Shortly after her turn started, Stuart was "knocked [] out of the game and [] realized something was out of order." She saw that Hull and the gunman had possession of her laptop, which had been on a table three feet away from her, with her homework still visible on the screen.

Davis and Hull were each indicted on four counts of robbery with a dangerous weapon, and one count of first-degree burglary. At the close of the State's evidence, defendants moved to dismiss the charges. The trial court granted these motions with respect to the robbery with a dangerous weapon of Stuart, and denied them as to the other charges. With respect to the robbery of Stuart, the trial court submitted the lesser included offense of larceny from the person to the jury.

Defendants were found guilty of all charges. Hull was sentenced to consecutive active prison terms of 51-74 months for the robbery of Hawkins, 51-74 months for the robbery of Williams, and 5-15 months for the larceny from Stuart. He was

also sentenced to concurrent active prison terms of 51-74 months for the robbery of Perry and 51-74 months for first-degree burglary. Davis was sentenced to consecutive active prison terms of 57-81 months for the robbery of Hawkins, 57-81 months for the robbery of Williams, and 6-17 months for the larceny from Stuart. She was also sentenced to concurrent active prison terms of 57-81 months for the robbery of Perry, and 57-81 months for first-degree burglary.

Defendants appeal.

## II. Larceny from the Person

In defendants' first and second arguments, they contend that the trial court erred by denying their motions to dismiss the charge of larceny from the person as to Stuart, or alternatively that the trial court committed plain error when it instructed the jury on that offense. We disagree.

## A. Standard of Review

"This Court reviews the trial court's denial of a motion to dismiss *de novo*." *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007).

We review "unpreserved issues for plain error when they involve either (1) errors in the judge's instructions to the

jury, or (2) rulings on the admissibility of evidence." *State v. Gregory*, 342 N.C. 580, 584, 467 S.E.2d 28, 31 (1996).

> [T]he plain error rule ... is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a "*fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done," or "where [the error] is grave error which amounts to a denial of a fundamental right of the accused," or the error has "'resulted in a miscarriage of justice or in the denial to appellant of a fair trial'" or where the error is such as to "seriously affect the fairness, integrity or public reputation of judicial proceedings" or where it can be fairly said "the instructional mistake had a probable impact on the jury's finding that the defendant was guilty."

*State v. Lawrence*, 365 N.C. 506, 516-17, 723 S.E.2d 326, 333 (2012) (quoting *State v. Odom,* 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983)).

## B. Analysis

At the close of State's evidence, defendants moved to dismiss the charge of robbery as to Stuart. The trial court dismissed that charge, but submitted to the jury the lesser offense of larceny from the person. On appeal, defendants first contend that the trial court erred in denying their motions to dismiss the charge of larceny from the person.

The essential elements of larceny are: (1) taking the property of another; (2) carrying it away; (3) without the owner's consent; and (4) with intent to permanently deprive the owner of the property. *State v. Wilson*, 154 N.C. App. 686, 690, 573 S.E.2d 193, 196 (2002). It is larceny from the person if the property is taken from the victim's person or "within the victim's protection and presence at the time of the taking." *Id*. at 691, 573 S.E.2d at 196 (quoting *State v. Barnes*, 121 N.C. App. 503, 505, 466 S.E.2d 294, 296, *aff'd*, 345 N.C. 146, 478 S.E.2d 188 (1996)).

In the instant case, the State presented evidence that Stuart was using her computer to do her physics homework and, while studying, was also playing a computer game called "Dance Central." The game was operated by a Kinect video game system connected to Hawkins' television. A participant of the game was to duplicate dance moves on the television display. The participant's dance moves were captured by a video camera and the game then compared the displayed moves with the participant's moves in a side by side display.

When defendants and the gunman entered the apartment, it was Stuart's turn to play the game. She had just started her turn – Stuart testified that it was "shortly after I got like

maybe like a verse -- like a couple of sentences into the song"
– when Stuart was "bumped" by someone, which caused her to be
"kicked out" of the game. At that point, she saw defendants
absconding with her laptop.

Defendants contend that Stuart was unaware of the taking
until after it occurred; however, the evidence suggests that
Stuart became aware of the taking as it occurred. Specifically,
Matthews testified:

> I was pretty much oblivious to what was
> happening, so I was just like who was this
> person picking up [Stuart]'s laptop, and so
> I asked [Stuart], I said, "Do you know this
> person?" and she said, "No." I was like,
> "Well, she took your laptop."

Stuart saw the laptop among the items that defendants were
stealing, and which were in the possession of defendants as they
exited the apartment.

The test set forth in *Barnes* was whether the property
stolen was taken from the victim's person or within the victim's
protection and presence when the property was stolen. *Barnes*,
121 N.C. App. at 505, 466 S.E.2d at 296. In the instant case,
the laptop computer was not on Stuart's person when it was
taken. However, it was about three feet from Stuart, and the
homework, from which she was taking a momentary break, was still
on the computer screen. The computer was therefore within her

protection and presence at the time it was taken. The brief break from her studies did not remove the laptop from her protection or presence.

The trial court did not err in denying the motions of the defendants to dismiss the charge of larceny from the person at the close of all of the evidence.

Defendants next argue, in the alternative, that the trial court erred in its instructions to the jury with regard to the charge of larceny from the person. Since defendants failed to object to the trial court's jury instruction at trial, we review this issue only for plain error.

The trial court charged the jury in accordance with North Carolina Pattern Jury Instruction Criminal 216.20 as follows: "Property is stolen from the person if it was under the protection of the person at the time. Property may be under the protection of the person although not actually attached to her, for that which is taken in her presence is, in law, taken from her person." *See* N.C.P.I., Crim. 216.20, fn. 1 (2011). Defendants contend that this instruction was based upon the Supreme Court case of *State v. Buckom*, 328 N.C. 313, 401 S.E.2d 362 (1991), and that since *Buckom* was decided, the Supreme Court narrowed the definition of that element of larceny from the

person. Defendants cite to the case of *State v. Barnes*, in which our Supreme Court held that "for larceny to be 'from the person,' the property stolen must be in the immediate presence of and under the protection or control of the victim *at the time the property is taken*." *Barnes*, 345 N.C. at 149, 478 S.E.2d at 190 (emphasis in original).

Defendants contend that *Barnes* abrogated the holding in *Buckom*. We hold that there is no substantial difference between the holdings of *Buckom* and *Barnes*. In *Buckom*, the Court observed that:

> Taken in the context of the foregoing common law principles, "[p]roperty is stolen 'from the person,' if it was under the protection of the person at the time.... [P]roperty may be under the protection of the person although not actually 'attached' to him." R. Perkins & R. Boyce, *Criminal Law* 342 (3d ed. 1982) (footnotes omitted). For example, if a jeweler places diamonds on a counter for inspection by a customer, under the jeweler's eye, the diamonds remain under the protection of the jeweler. *Id.* It has not been the general interpretation that larceny from the person "requires an actual taking from the person, and is not committed by a taking from the immediate presence and actual control of the person.... As said by Coke in the 1600's: 'for that which is taken in his presence, is in law taken from his person.' " *Id.* at 342-43 (quoting 3 Coke, *Institutes* *69).

*Buckom*, 328 N.C. at 317-18, 401 S.E.2d at 365. In *Barnes*, the Court did not disagree with this analysis; in fact, it relied upon *Buckom*:

> The crime of larceny from the person is regularly understood to include the taking of property "from one's presence and control." Thus, for larceny to be "from the person," the property stolen must be in the immediate presence of and under the protection or control of the victim *at the time the property is taken.*

*State v. Barnes*, 345 N.C. 146, 149, 478 S.E.2d 188, 190 (1996) (citing, *inter alia*, *Buckom*, 328 N.C. at 317-18, 401 S.E.2d at 365) (citations omitted) (emphasis in original). *Barnes* ultimately distinguished *Buckom* based upon the facts of the case, but in terms of the law the two opinions were in agreement. The addition of the words "at the time the property is taken" adds nothing to the legal analysis of the elements of the crime. The only temporally relevant time is the time of the theft itself.

Even assuming *arguendo* that *Barnes* superseded the holding in *Buckom*, defendants have failed to show how this impacts the outcome of their case. Whether we rely upon *Buckom* or *Barnes*, there was substantial evidence that the property was taken from Stuart's presence, that she was using the computer to perform her physics homework, and that the computer was under her

control or protection at the time it was taken. Even had the jury been instructed as defendants suggest, we hold that it would not have had a "probable impact on the jury's finding that the defendant was guilty." Defendants have failed to show that the trial court committed plain error in its jury instruction concerning the charge of larceny from the person.

This argument is without merit.

## III. Mitigating Factor

In her third argument, Davis contends that the trial court abused its discretion by failing to find a statutory mitigating factor, and by failing to consider mitigating evidence. We disagree.

## A. Standard of Review

> The standard of review for application of mitigating factors is an abuse of discretion. The court shall consider evidence of aggravating or mitigating factors present in the offense that make an aggravated or mitigated sentence as appropriate, but the decision to depart from the presumptive range is in the discretion of the court. The court shall make findings of the aggravating and mitigating factors present in the offense only if, in its discretion, it departs from the presumptive range of sentences specified in G.S. 15A-1340. 17(c)(2).

*State v. Hagans*, 177 N.C. App. 17, 31, 628 S.E.2d 776, 785 (2006) (citations and quotations omitted).

## B. Analysis

We have previously held that the trial court is required to make findings of aggravating and mitigating factors "only if, in its discretion, it departs from the presumptive range of sentences[.]" *Hagans*, 177 N.C. App. at 31, 628 S.E.2d at 785. Davis was sentenced from the presumptive range. Accordingly, we hold that the trial court was not required to make findings of aggravating or mitigating factors, or to impose a mitigated range sentence.

This argument is without merit.

## IV. Lesser Included Offense

In his third argument, Hull contends that the trial court erred in denying defendant's request to instruct the jury on the lesser included offense of misdemeanor larceny with regard to the theft of Stuart's laptop computer. We disagree.

## A. Standard of Review

"[Arguments] challenging the trial court's decisions regarding jury instructions are reviewed *de novo* by this Court." *State v. Osorio*, 196 N.C. App. 458, 466, 675 S.E.2d 144, 149 (2009). "An instruction on a lesser-included offense must be given only if the evidence would permit the jury rationally to find defendant guilty of the lesser offense and to acquit him of

the greater." *State v. Millsaps*, 356 N.C. 556, 561, 572 S.E.2d 767, 771 (2002).

## B. Analysis

Hull contends that Stuart's lack of awareness of the theft as it happened did not support a conviction of larceny from the person, but rather supported a conviction for the lesser offense of misdemeanor larceny. Hull cites to our decision in *State v. Lee*, 88 N.C. App. 478, 363 S.E.2d 646 (1988), in which we held that the theft of a woman's purse from a shopping cart while she was several steps away and unaware of the theft did not constitute larceny from the person, but rather constituted misdemeanor larceny.

Hull, in his argument on appeal, challenges only the element of proximity and control. As he does not challenge the other elements of larceny from the person, we limit our review only to proximity and control. *See State v. Lucas*, ___ N.C. App. ___, ___, 758 S.E.2d 672, 676 (2014).

We note first that *Lee* was decided prior to both *Buckom* and *Barnes*, and that these later Supreme Court cases clarified the law of larceny from the person. We further note that, in contrast with the victim in *Lee*, who did not realize that the theft had occurred until sometime later, the evidence in the

instant case was that Stuart became aware of the theft immediately, as it was occurring. We hold that the instant case is distinguishable from *Lee*.

The crucial elements of larceny from the person are proximity and control. The evidence in the instant case supports both elements. Stuart's awareness, although not one of the elements of the offense, is a factor to be considered in analyzing her control. As stated in section II B of this opinion, Stuart was sufficiently aware of the larceny as it occurred to have been in control of her property.

Because the evidence satisfied the element of proximity and control, and Hull challenges no other elements of larceny from the person, we hold that the evidence satisfied all of the requirements of the greater offense. The trial court did not err in declining to instruct the jury upon the lesser offense of misdemeanor larceny.

This argument is without merit.

NO ERROR.

Judge GEER concurs.

Judge HUNTER, Robert N., Jr. concurred prior to 6 September 2014.